# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 CR 923 | DATE | April 16, 2002 |
| CASE TITLE | *United States v. Miedzianowski, et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, this Court DENIES Defendants Miedzianowski, Omar, Lis, and Feliciano's motions for judgment of acquittal or new trial, and motions for an arrest of judgment [525-1, 526-1, 527-1, 529-1, 530-1].

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

APR 25 2002
date docketed

docketing deputy initials

Document Number

628

RTS   courtroom deputy's initials

date mailed notice

Date/time received in central Clerk's Office   mailing deputy initials



DOCKETED

APR 2 5 2002

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Hon. Blanche M. Manning** |
| | ) | |
| v. | ) | **98 CR 923** |
| | ) | |
| **JOSEPH J. MIEDZIANOWSKI, et. al.,** | ) | |

## <u>MEMORANDUM AND ORDER</u>

Defendants Joseph Miedzianowski, Mohammed Omar, Alina Lis, and Omar Feliciano have moved this Court pursuant to Federal Rules of Criminal Procedure 29, 33, and 34 for a judgment of acquittal or alternatively for a new trial, and for an arrest of judgment. For the reasons set forth below, this Court DENIES Defendants' motions.

### BACKGROUND

A complete summary of the sixth superseding indictment and the facts of this case are contained in this Court's prior Memorandum and Orders, and therefore, the Court will only review the facts as they relate to the instant motions.

The Government's Sixth Superceding Indictment alleged that Defendant Miedzianowski, a former Chicago Police Officer, along with the other Defendants conspired with others to commit acts of racketeering and to distribute narcotics. The Government's seven count indictment also included several other charges against Miedzianowski.

After a three month trial, the jury found Defendant Miedzianowski guilty of RICO conspiracy (count 1), conspiracy to possess with intent to distribute narcotics (count 2), conspiracy to commit extortion (counts 3 and 7), extortion (count 4), possession with intent to

628

distribute cocaine (count 5), unlawful possession of a firearm (counts 6 and 9), distribution of cocaine (counts 8 and 10); Defendant Omar guilty of RICO conspiracy (count 1) and conspiracy to possess with intent to distribute narcotics (count 2); and Defendants Lis and Feliciano guilty of conspiracy to possess with intent to distribute narcotics (count 2).

## ANALYSIS

Defendants Miedzianowski and Lis have moved this Court for a judgment of acquittal, or alternatively for a new trial, and for an arrest of judgment, pursuant to Federal Rules of Criminal Procedure 29, 33 and 34. Defendant Omar has moved to adopt Miedzianowski's post-trial motions. Likewise, Defendant Feliciano has moved for a new trial. Defendants' contentions can be grouped into the following categories: (I) the evidence presented at trial was not sufficient to sustain the jury's verdict; (II) the Court made several errors that require a new trial; and (III) the verdict should be arrested because this Court lacked jurisdiction to hear the case and counts 1 and 2 of the sixth superseding indictment failed to charge an offense. The Court will discuss each of these contentions in turn.

First, however, this Court will address Defendant Omar's motion to adopt Miedzianowski's post-trial motions. The Government objects to this motion on the grounds that the post-trial motions should be individually tailored to a particular Defendant's standing, needs, and concerns. The jury here found both Defendants guilty of RICO conspiracy and conspiracy to possess with intent to distribute narcotics. Although motions to adopt are generally disfavored, this Court grants Omar's motion to adopt Miedzianowski's post-trial motions.

2

## I. Standards of Review

As a preliminary matter, the Court will set forth the standards of review governing a motion for acquittal and a new trial. Under Federal Rule of Criminal Procedure 29, a court may acquit a defendant of "one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing a motion for judgment of acquittal pursuant to Rule 29, the Seventh Circuit mandates that the district court determine:

> whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendants] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government . . . bearing in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.

United States v. Reed, 875 F.2d 107, 111 (7th Cir. 1989). In short, the court views all the evidence in the government's favor and is absolutely barred from second-guessing the jury's credibility determinations or findings of fact. Id. Instead, the court merely assesses the record to determine if all the admissible evidence supports the defendants' adjudication of guilt beyond a reasonable doubt. Id.

Rule 33 permits the Court to order a new trial "in the interests of justice." Unlike a motion for acquittal under Rule 29, in ruling on a motion for a new trial under Rule 33, the court is not required to view the evidence in a light most favorable to the government. United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999); 58 Am. Jur. 2d New Trial §391(2001). However, despite the more lenient standard, Rule 33 motions are nevertheless disfavored and courts generally should only grant in "the most extreme cases." United States v. Linwood, 142 F.3d 418, 422 (7th Cir. 1998). See also United States v. Kamel, 965 F.2d 484, 490 n.7 (7th Cir.

1992). The trial court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." Reed, 875 F.2d at 113. The court may only order a new trial if "the verdict is against the manifest weight of the evidence" and a guilty verdict would result in a "miscarriage of justice." Washington, 184 F.3d at 657.

## II.    Sufficiency of Evidence

First, the Court will analyze Defendants' challenges to the sufficiency of the evidence to determine whether under Rule 29, the evidence was sufficient to sustain the jury's verdict, and under Rule 33, whether letting the guilty verdict stand would result in a "miscarriage of justice." Washington, 184 F.3d at 657.

### A.    Defendant Lis

Count 2 of the sixth superseding indictment alleged that Defendant Lis violated 21 U.S.C. § 841 by conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base, quantities of heroin and quantities of marijuana. Lis argues that the evidence at trial failed, as a matter of law, to prove that she was a knowing and willing participant in the conspiracy. Instead, she contends that the evidence only showed that she was in the company of Miedzianowski and the other conspirators.

"In order to sustain a conspiracy conviction [for conspiracy], the Government must present substantial evidence that a conspiracy existed and that the defendant agreed to join it. Unlike the general federal conspiracy statute, [the statute] does not require proof of an overt act in furtherance of the conspiracy." United States v. Benjamin, 116 F.3d 1204, 1206 (7th Cir. 1997). However, mere presence and association with someone who is committing an illegal act are insufficient to establish a defendant's guilt. United States v. Di Novo, 523 F.2d 197, 201 (7th

4

Cir. 1975). Yet, presence or association with narcotics or its possessor with the intent or ability to exercise dominion or control over the drugs is sufficient to sustain a defendant's conviction. See United States v. Mancillas, 580 F.2d 1301, 1309 (7th Cir. 1978).

After reviewing the parties' submissions and the relevant parts of the record, this Court finds that there was sufficient evidence for the jury to reasonably conclude beyond a reasonable doubt that Lis was an active participant in the conspiracy, and therefore, concludes that the guilty verdict is not against the manifest weight of evidence and does not represent a "miscarriage of justice." For example, several witnesses (David Miranda, Orlando Martir, Jesus Cuevas, Juan Martir, and Francisco Figueroa) testified that Lis strapped money and drugs onto drug couriers, made several drug runs between Chicago and Miami herself, transported drug couriers to and from the airports in Chicago and Miami, and "cooked" powdered cocaine into crack cocaine in her apartment. For example, Juan Martir, a "don" in the Latin Maniac Disciples and major participant in the drug conspiracy, testified that Lis was a drug courier for him and that she expressed concern that flight attendants were beginning to recognize her because of the frequent trips she was making (sometimes twice a week) between Chicago and Miami. In support of these witnesses' testimony, the Government presented evidence in the form of an exhibit (not objected to by defense counsel) that Lis purchased at least eight airline tickets between Chicago and Miami. The jury was free to credit or discredit the testimony of these witnesses, and this Court is not permitted to substitute its judgment for that of the jury. Accordingly, the Court denies Lis's motions for judgment of acquittal and a new trial on the grounds of insufficiency of the evidence.

## B.     Defendants Miedzianowski and Omar

Miedzianowski and Omar also contend that the verdict was against the weight of the

evidence. In support, they assert that "[t]he government failed to sustain its burden of proof beyond a reasonable doubt of every material element of all the charged offenses contained in the Sixth Superseding Indictment," and "[t]he government failed to sustain its burden of proof beyond a reasonable doubt on [the quantity of drugs]."

The Government contends that Defendants have waived their arguments for acquittal under Rule 29 because they have failed to develop these arguments, failed to identify what evidence was lacking, and cite no any legal authority whatsoever in support of their arguments. In support of this argument, the Government cites several Seventh Circuit cases, including United States v. Wimberly, 60 F.3d 281, 287 (7th Cir. 1995), which held that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived, even where those arguments raise constitutional issues."

While the Government is correct in that Defendants have not put forth well developed arguments in support of their motion for acquittal under Rule 29, the cases cited by the Government do not apply to motions under Rule 29. Unlike arguments made on appeal to the Seventh Circuit, "[s]pecificity is not required by Rule 29." 2A Charles A. Wright Federal Rules of Criminal Procedure § 466 at 298 (2000). In United States v. South, 28 F.3d 619, 627 (7th Cir. 1994), the Seventh Circuit held that although the defendant's arguments in support of his motion for acquittal "were not the most sophisticated, they were enough to put the government on notice . . . . Rule 29 does not require anything more." Consequently, while this Court finds that Defendants have not put forth well developed arguments in support of their motion for acquittal under Rule 29, the Court will not consider these arguments waived for lack of specificity.

After reviewing the pertinent portions of the record, this Court finds that there was

sufficient evidence for the jury to reasonably conclude beyond a reasonable doubt that Miedzianowski and, to a lesser yet sufficient extent, Omar were active participants in the conspiracy, and therefore, concludes that the guilty verdict is not against the manifest weight of evidence and does not represent a "miscarriage of justice."

## III.   Alleged Pretrial and Trial Errors

Defendants further contend that they are entitled to a new trial under Rule 33 because the Court made pretrial errors and/or erroneously allowed in evidence at trial which deprived them of a fair trial.[1]

### A.   Defendant Lis

Lis argues that the Court erred in denying her pretrial motion for a bill of particulars, her co-defendants' motion for severance (which she joined), her co-defendant's objections to the Government's Santiago proffer, and in refusing to dismiss the indictment and superseding indictments because they were returned beyond the time permitted under the Speedy Trial Act and the Due Process Clause of the Fifth Amendment. The bill of particulars, severance and

---

[1]     Similar to its objection to Defendants' Rule 29 motions, the Government contends that Defendants have waived their arguments for a new trial under Rule 33 because they have failed to develop these arguments, failed to identify what evidence was lacking, and cite no legal authority whatsoever in support of their arguments. As explained above, Defendants are not required to specify these arguments for Rule 29 motions; however, it does not appear that such a rule applies to motions for a new trial under Rule 33. See United States v. Pinkney, 543 F.2d 908, (D.D.C. 1976) (motion for a new trial alleging ineffective assistance of counsel must set forth evidence upon which elements of a constitutionally deficient performance might be properly made"); United State v. Boykin, 275 F. Supp. 16 (M.D. Pa. 1967) (denying a motion for a new trial, the court held that defendant needed to do more than make a "broad contention that trial court erred in admitting inadmissable evidence"). Although the Court agrees with the Government and finds that Defendants have failed to develop their arguments for a new trial, to identify what evidence was lacking, or to make citations to supporting legal authority, the Court will nevertheless review Defendants' motions for a new trial under Rule 33.

Santiago contentions are merely restatements of arguments previously rejected by the Court, and Lis has failed to support her renewed contentions with any pertinent authority or specific citations to the record. Therefore, without having any new arguments to review, reviewing its prior Memorandum and Orders rejecting these contentions prior to the trial, the Court finds that the Court did not err in denying these motions.

As for the Speedy Trial Act argument, Lis raises this argument for the first time in her post-trial motions, and therefore cannot now raise this issue for the first time in her motion for a new trial. United States v. McBribe, 862 F.2d 1316, 1319 (8th Cir. 1988). Nevertheless, this Court finds that this contention is not sufficient to warrant a new trial. The original indictment was returned within the appropriate time frame, and the Seventh Circuit has held that superseding indictments filed longer than thirty days after an arrest that adds charges to those contained in the original indictment do not violate the Speedy Trial Act. United States v. Hemmings, 258 F.3d 587, 591 (7th Cir. 2001) (collecting cases). Accordingly, this Court denies Lis' motion for a new trial on Speedy Trial Act grounds.

Lis also asserts that the Court erred at trial by admitting evidence of narcotics transactions of charged co-defendants that were not in furtherance of the conspiracy. Lis, however, has failed to identify what evidence was allowed in that was "not in furtherance of the conspiracy," and therefore, it is impossible for the Government to respond or this Court to address this argument. This trial lasted approximately three months, had five defendants, and had several witnesses who testified to drug transactions that were part of the RICO conspiracy, the extortion conspiracy and the narcotics conspiracy. It is not the Court's job to sift through the volumes of trial transcripts to determine what evidence the defendant is complaining of and to make the defendant's

8

arguments. Therefore, without having any specific testimony or witnesses to review, the Court finds that the Court did not err at trial by admitting evidence of narcotics transactions of charged co-defendants that were not in furtherance of the conspiracy.

Finally, Lis asserts that the testimony of Ralph Meczyk about the integrity of the FBI deprived her of a fair trial. At trial, Meczyk testified that one of his former clients stated that his case could be fixed for a bribe. In response, Meczyk stated that the FBI was "incorruptible." Counsel for Lis, however, did not object to this testimony, nor did he exercise his right to cross-examine Meczyk, and therefore, cannot now raise this issue for the first time in her motion for a new trial. McBribe, 862 F.2d at 1319. Regardless, Lis has failed to explain how Meczyk's testimony unfairly prejudiced her, and this Court finds that she was not adversely affected by this statement.

Accordingly, this Court denies Lis' motion for a new trial because the guilty verdict is not against the manifest weight of evidence and does not represent a "miscarriage of justice."

## B.    Defendants Miedzianowski and Omar

Likewise, Defendants Miedzianowski and Omar claim that they are entitled to a new trial because this Court made several pretrial errors.

### 1.    Pretrial Errors

Defendants broadly state that they "renew every motion and objection made prior to trial." In boilerplate fashion, Miedzianowski and Omar list all the motions and objections that they renew, "including but not limited to": a motion to preserve evidence and discoverable material, a motion for a bill of particulars, motions for production and disclosure of informants and portions of presentence reports, motions to compel compliance with Rule 17(c) trial

subpoenas and the production of tape recorded conversations with cooperating witnesses, and objections relating to the government's motion to quash and its application to exclude speedy trial time. Within this list, Defendants also renew "all defense motions made by counsel for codefendants and adopted by [] Miedzianowski."

Miedzianowski and Omar argue that this Court erred in denying their request for an evidentiary hearing on their motion to suppress evidence relating to the Government's Title III wiretap surveillance and erred in finding that the Government's applications to wiretap Defendants' home telephones sufficiently established probable cause.

These arguments have already been made in prior motions previously rejected by this Court and Defendants have failed to support their renewed contentions with any pertinent authority or specific citations to the record. Therefore, without having any new arguments to review, reviewing its prior Memorandum and Orders rejecting these contentions prior to the trial, the Court finds that the Court did not err in denying these motions.

## 2. Errors Made During Trial

Miedzianowski and Omar also contend that the Court made several errors during the trial. Most of these contentions are undeveloped and unsupported by pertinent authority or citations to the record, making it impossible for the Court to review the validity of these arguments. Without citing to the record or identifying the specific objections or evidence they find in error, Miedzianowski and Omar assert that the Court erred in: "evidentiary rulings, including motions in limine, in overruling objections made by the defense and sustaining objections made by the government[;] permitting the government to introduce into evidence inadmissible hearsay outside of the government's Santiago proffer[; and] admitting evidence that amounted to other bad

evidence against Mr. Miedzianowski which did not bear any relevance to the charged offenses, including but not limited to the government's playing of Title III tapes which involved such alleged bad acts." Miedzianowski and Omar also "renew[] every defense objection made and/or adopted during the trial [and claim that they] did not receive a fair and impartial trial as guaranteed [them] under the Fourteenth Amendment to the United States Constitution."

These arguments have already been made in prior motions previously rejected by this Court and Defendants have failed to support their renewed contentions with any pertinent authority or specific citations to the record. Therefore, without having any new arguments to review, reviewing its prior Memorandum and Orders rejecting these contentions prior to the trial, the Court finds that the Court did not err in denying these motions.

Furthermore, Miedzianowski and Omar contend that "[t]he Court erred in not sustaining the defense objections to government proposed jury instructions and erred in not granting defense instructions[.]" Defendants, however, have failed to support their renewed contentions with any pertinent authority showing that this Court did not give the jury proper instructions. Therefore, without having any new arguments to review, reviewing its prior rulings on jury instructions, the Court finds that the Court did not err in not sustaining Defendants' objections to the Government's proposed jury instructions.

Finally, Miedzianowski also contends that he is entitled to a new trial because this Court "erred in not declaring a mistrial due to the prosecution's rebuttal closing arguments that improperly shifted the burden of proof to the defense." Unfortunately, Miedzianowski has failed to cite to a particular portion of the record of the rebuttal. Reviewing the rebuttal, this Court finds that the Court did not err in not declaring a mistrial based on anything the Government

11

stated in its rebuttal.

Accordingly, this Court Denies Miedzianowski and Omar's motion for a new trial because the guilty verdict was not against the manifest weight of evidence and does not represent a "miscarriage of justice."

### C.    Defendant Feliciano

Feliciano contends that he is entitled to a new trial because: (1) the Government made improper remarks in closing arguments that violated his Fifth Amendment privilege not to testify; and (2) the Government's remark about one of his codefendants (Lisette Rivera) deprived him of a fair trial. The Court will address each of these contentions in turn.

### 1.    Alleged Fifth Amendment Violation

To evaluate if comments made by the Government deprive a defendant of a fair trial, courts must first look at the remarks in isolation to determine if they were improper. United States v. Mietus, 237 F.3d 866, 870 (7th Cir. 2001). If the remarks are improper, the remaining steps in the analysis depend on whether the remarks violated a specific constitutional right, including Fifth Amendment rights, or if the remark goes to more general prosecutorial misconduct that deprives the defendant of the due process guarantee of a fair trial. Id. Improper remarks impinging on a specific constitutional right will result in the granting of a new trial only if the government can prove "beyond a reasonable doubt that the defendant would have been convicted absent the unconstitutional prosecutorial comments." Id. Improper comments of the more general variety, that do not implicate specific trial rights, warrant a less stringent standard to uphold a defendant's conviction. Id. In that instance, the court must consider the remarks in light of the entire trial to determine if the "comments so infected the trial with unfairness as to

12

make the resulting conviction a denial of due process." <u>Id.</u>

A direct comment by the Government on a defendant's decision not to testify violates the defendant's Fifth Amendment right. <u>United States v. Cotnam</u>, 88 F.3d 487, 497 (7th Cir. 1996). Additionally, an indirect comment violates the Fifth Amendment either if (1) it was the prosecutor's manifest intention to refer to the defendant's silence, or (2) the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's silence. <u>Mietus</u>, 237 F.3d at 871; <u>Cotnam</u>, 88 F.3d at 497. When a prosecutor states the government's evidence is "uncontradicted," "undenied," "unrebutted," "undisputed," etc., the Fifth Amendment has not been violated unless only the defendant can contradict, deny, or rebut the evidence in question. <u>Id.</u> When considering if any given remark violated a defendant's Fifth Amendment rights, the courts must examine the remark in context of the entire trial. <u>Mietus</u>, 237 F.3d at 871.

Here, Feliciano cites to only one remark by the Government that allegedly implicates his Fifth Amendment right not to testify. In its rebuttal at closing, the Government stated, "It's not the first time that a lawyer's come in with no defense and jumped up with no basis and called a witness a liar." (Tr. 7682). Feliciano believes the statement he had "no defense" would naturally and necessarily be taken as a comment on his failure to take the stand, and that the Government manifestly intended to highlight this point. This remark, considered in isolation, does come close to implicating Feliciano's Fifth Amendment privilege. <u>See Cotnam</u>, 88 F.3d at 499 (reversing conviction where the prosecutor made numerous remarks to "uncontroverted" evidence in closing argument); <u>Williams v. Lane</u>, 826 F.2d 654, 665 (7th Cir. 1987) (prosecutor manifestly intended to point to defendant's failure to take the stand by stating a victim "told it to you and

13

nobody else told you anything different"). While the Government did not use the term

"uncontradicted," stating that Feliciano had "no defense"carries a similar connotation. Having

"no defense" also implies, as in Williams, that Feliciano did not take the stand to tell the jury

"anything different."

While the Government's comment may appear problematic considered in isolation, when

considered in context , the comment fails to amount to a violation of Feliciano's Fifth

Amendment right. In response to a defendant's unsubstantiated attack on the credibility of a

government witness, the government may respond by stating that the defendant has failed to put

forth any evidence in support of its attack on the witness' credibility. See United States v. Reed,

2 F.3d 1441, 1449-50 (7th Cir. 1994) (holding prosecutor's remark that defendant had not

brought forth any evidence to support his allegation of evidence tampering did not violate Fifth

Amendment where the comment was in direct response to an argument defense made but failed

to prove); United States v. McKenzie, 922 F.2d 1323, 1326-27 (7th Cir. 1991) (holding no Fifth

Amendment violation where prosecutor stated there was no evidence favorable to the defendants

in rebuttal to the defense's attack on the government's witnesses).

Here, the Government's comment was made in response to Feliciano's counsel calling a

witness a liar in the course of his closing argument. (Tr. 7400). The main thrust of the

prosecution's use of the contested statement was to demonstrate that Feliciano had failed to offer

any evidence regarding his allegation that one of the prosecution's witnesses was a liar. This

point on the context of the prosecution's statement is further emphasized by the fact that the

remark in question was immediately preceded by a reference to the statement by Feliciano's

counsel that the witness was a liar. (Tr. 7682). This preface to the remark by the prosecution put

the focus on Feliciano's inability to produce evidence supporting his allegation that a witness was a liar; it did not naturally and necessarily focus on Feliciano's decision not to take the stand, especially in light of the fact that presumably any number of people other than Feliciano could testify on the witness's status as a liar.

Also, Feliciano's counsel immediately objected to the remark, and after a brief side bar, the Court sustained the objection and instructed the jury to disregard the comment. (Tr. 7682-84). While Feliciano argues that he is prejudiced because instructions to the jury had been given before this single remark was made, the Court's instruction following the side bar made it clear to the jury that it should disregard the preceding prosecutorial statement. McKenzie, 922 F.2d at 1327 (affirming conviction where trial judge instructed jury to disregard immediately following a questionable comment by the prosecutor in closing arguments). Thus, any prejudice that may have resulted from the remark by the Government was remedied by the Court's instruction to the jury, and therefore, taken in context, the Government's statement did not constitute a violation of Feliciano's Fifth Amendment rights.

Even if the remark did implicate Feliciano's right not to testify, he would still not be entitled to a new trial because the remark constituted a harmless error. Feliciano correctly points out that a constitutional violation warrants a reversal of a criminal conviction unless the Government can prove the jury would have convicted the defendant, absent the violation, beyond a reasonable doubt. United States v. Hastings, 461 U.S. 499, 510-11 (1983). However, as the Government points out, overwhelming evidence regarding Feliciano's guilt was presented at trial, including testimony of his coconspirators and recorded conversations discussing illegal activity. (Tr. 2751-65.) Thus, given the evidence against Feliciano, "one stray remark, however,

in artful, would   not have made a great impact" on the minds of the jurors.  <u>McKenzie</u>, 922 F.2d at 1327.  Additionally, this Court's instruction to the jury to disregard the remark would have negated any prejudicial effect the comment by the prosecutor would have had, especially in light of all the other evidence presented at trial.

In sum, while the Government's comment that Feliciano had "no defense" may have been prejudicial in isolation, taken in context the remark was in response to counsel's attack on the credibility of a witness.  Additionally, any possible prejudicial effect of this single remark was remedied by this Court's instruction for the jury to disregard it.  Finally, the rest of the evidence presented at trial overwhelmingly supports the conclusion that the remark was a harmless error. Therefore, this Court denies Feliciano's motion for a new trial because the guilty verdict is not against the manifest weight of evidence and does not represent a "miscarriage of justice."

### 2.    Improper Prosecutorial Remarks Regarding Codefendant

Feliciano additionally claims that improper remarks by the Government violated the right to a fair trial for his Co-Defendant Rivera, and that this violation, coupled with the violation of his own Fifth Amendment right, had the cumulative effect of denying him a fair trial. Feliciano contends that the Government violated Rivera's Fifth Amendment right during its rebuttal when the Government stated that Rivera could have but failed to subpoena witnesses to support her argument that a Government witness was biased against her.  The theory goes, assuming the rights of Feliciano and Rivera were violated, that the Government's remarks distinguished the only two Defendants – Rivera and Feliciano – that elected not to take the stand, and thereby, deprived Feliciano of his right to a fair trial.  While it does appear Feliciano has standing to make this argument, the statement fails to rise to the level of depriving Rivera of her right to a fair trial.

16

As an initial matter, the Court must determine the proper standard under which to evaluate whether Rivera's right to a fair trial was violated. Feliciano evaluates the remark using the test for general prosecutorial misconduct. However, he ultimately claims that the allegedly improper comments by the Government led to a violation of his Fifth Amendment rights because the remarks had the effect of distinguishing those defendants who elected not to testify at trial. Such an argument implicitly implicates Rivera's Fifth Amendment rights because the entire thrust of Feliciano's argument that he was deprived of a fair trial hinges on the isolation of Defendants that did not testify, which is a Fifth Amendment violation. Therefore, the Court examines the remark concerning Rivera under the same test as the remark regarding Feliciano, whether the prosecution's statement resulted in a violation of the Fifth Amendment right not to testify.

In his brief Feliciano does not cite any cases in which a defendant attempted to argue that the violation of a codefendant's rights deprived the defendant of the right to a fair trial. Conversely, the Government asserts Feliciano does not have standing to raise any violation of Rivera's rights without any citation to case law. The Seventh Circuit has stated as a general principle that a violation of another person's Fifth Amendment rights may rise to the level of depriving a defendant of the right to a fair trial. United States v. Chiavola, 744 F.2d 1271, 1273 (7th Cir. 1984) (stating Fifth Amendment and due process violations occur where evidence was obtained violating another person's Fifth Amendment rights through the use of extreme coercion or torture); United States ex rel. Cunningham v. DeRobertis, 719 F.2d 892, 896 (7th Cir. 1983) (concluding while petitioner did have standing to raise another person's Fifth Amendment rights, no violation of rights occurred where it had been established that codefendant's Fifth

17

Amendment rights had not in fact been violated). Thus, while it appears that Feliciano can in fact raise a violation of Rivera's Fifth Amendment right not to testify, Cunningham makes it clear that in doing so Feliciano must establish that Rivera's rights were in fact violated. 719 F.2d at 896.

The Court evaluates any violation of Rivera's Fifth Amendment right not to testify under the same test used above in examining Feliciano's rights. To meet this test, the prosecutor must have manifestly intended to put the focus on the defendant's decision not to take the stand, or the remark must naturally and necessarily have had this affect. Feliciano cites to only a single comment by the prosecution that involved Rivera's rights. Specifically, the Government stated in its rebuttal at closing that "there's evidence according to the question that there was a pool party with a large number of people. Any one of those people could have been subpoenaed to come here." (Tr. 7688). Rivera's counsel immediately objected to the comment. (Tr. 7688). The Court sustained this objection and instructed the jury to disregard the statement. (Tr. 7688-89).

While this single comment by the Government regarding the subpoena of witnesses may have implied that Rivera had an obligation to call a witness or prove she was innocent, it did not impinge on her right not to take the stand. Indeed, the Seventh Circuit has explicitly stated that comments regarding a defendant's failure to call witnesses does not implicate the Fifth Amendment privilege not to testify. United States v. DiCaro, 852 F.2d 259, 263 (7th Cir. 1988); United States v. Sblendario, 830 F.2d 1382, 1391 (7th Cir. 1987). These cases make it clear that while remarks about a defendant's subpoena power may constitute prosecutorial misconduct in certain circumstances, they do not violate a defendant's Fifth Amendment privilege not to take

18

the stand. Therefore, Feliciano cannot claim the remark about Rivera's failure to subpoena had the effect of isolating defendants who failed to take the stand because the remark did not implicate or place a burden on Rivera's Fifth Amendment right in the first place.

Moreover, even assuming the prosecutor's remark about Rivera's subpoena power could implicate her Fifth Amendment privilege, as explained above, this single comment in context of the entire trial would not have had such an affect. Similar to the remark concerning Feliciano, the prosecutor made only a single comment about Rivera that Feliciano challenges as improper. In light of the length of this trial and all the other evidence presented, it is doubtful that this single remark would have weighed heavily on the minds of the jurors. Furthermore, any prejudicial effect this remark may have had was cured by the Court's immediate instruction that the jury should disregard the remark.

In sum, Feliciano has alleged that the violation of his own Fifth Amendment rights, coupled with the violation of his codefendant's Fifth Amendment rights, had the cumulative effect of depriving him of a fair trial. However, these two isolated remarks, taken in the context of the entire trial, did not interfere with either defendant's Fifth Amendment privilege not to take the stand. Consequently, for the reasons set forth above, this Court denies Feliciano's motion for a new trial because the guilty verdict is not against the manifest weight of evidence and does not represent a "miscarriage of justice."

### IV.    Lack of Jurisdiction and Failure to Charge an Offense

Rule 34 requires a Court to arrest judgment if the indictment does not charge an offense or if the court was without jurisdiction of the offense charged. Fed. R. Crim. P. 34. Defendants Miedzianowski and Omar assert that the judgment against them should be arrested because "the

Court did not have jurisdiction over the subject matter" and "the Court did not have jurisdiction over the defendant." Prior to trial, this Court denied Defendants' motion to dismiss on the same grounds. Defendants, however, have failed to develop any new arguments and make no citations to legal authority. Consequently, reviewing the record and this Court's prior Memorandum and Order rejecting the instant contention, this Court finds that it did have jurisdiction over this action.

Defendants Miedzianowski and Omar also contend that count 1 of the sixth superseding indictment failed to charge an offense because it failed to allege sufficient facts to charge them with a RICO conspiracy. This contention is merely a restatement of the argument previously rejected by the Court in its prior Memorandum and Order, denying Miedzianowski's motion to dismiss count 1 of the sixth superseding indictment, and the Seventh Circuit in United States v. Glecier, 923 F.2d 496 (7th Cir. 1991).

Similarly, Defendant Lis moves for an arrest of judgment on the grounds that count 2 failed to state an offense. Lis contends that the federal narcotics offenses she was charged of violating are an invalid exercise of Congress' Commerce Clause power because the manufacture of "crack cocaine" is purely an intrastate activity. The Seventh Circuit has squarely rejected this type of challenge, recognizing Congress' broad authority to regulate drug-related activity. See United States v. Westbrook, 125 F.3d 996, 1008-10 (7th Cir. 1997) (rejecting contention that the Commerce Clause does not give Congress the power to criminalize interstate drug trafficking). Moreover, as explained above, the evidence at trial show that the members of the conspiracy, including Lis, transported cocaine and drug profits between Miami and Chicago.

Accordingly, the Court denies Defendants' motions for an arrest of judgment.

**CONCLUSION**

For the foregoing reasons, this Court DENIES Defendants Miedzianowski, Omar, Lis, and Feliciano's motions for judgment of acquittal or new trial, and motions for an arrest of judgment [525-1, 526-1, 527-1, 529-1, 530-1].

IT IS SO ORDERED.

ENTER:

_Blanche M. Manning_
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: _4-16-02_